**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. |
| | ) | |
| FASTEEL, INC., IGBALLE BEGOLLI, and | ) | FILED: APRIL 4, 2008 |
| ROBERT LUCIW, | ) | 08CV1940         EDA |
| | ) | JUDGE MANNING |
| Defendants. | ) | MAGISTRATE JUDGE COLE |
| | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Nautilus Insurance Company ("Nautilus"), by and through its counsel of record,

Bollinger, Ruberry & Garvey, and for its Complaint against Defendants Fasteel, Inc. ("Fasteel"),

Igballe Begolli, and Robert Luciw, alleges, states and avers:

**JURISDICTION**

1.      Plaintiff Nautilus is an Arizona insurance company, with its principal place of

business at 7233 East Butherus Drive, Scottsdale, Arizona 85260.

2.      Defendant Fasteel is an Illinois corporation, with its principal place of business at

5300 Main Street, Downers Grove, IL 60515.

3.      Defendant Igballe Begolli is an Illinois resident, whose primary place of residence

is located at 15209 Hamlin Street, Plainfield, IL 60544.

4.      Defendant Robert Luciw is an Illinois resident, whose primary place of residence

is located at 2130 N. Lawler, Chicago, IL 60639.

5.      Defendant Begolli has demanded $1,000,000 to settle the underlying claim

against Fasteel and Luciw.

6.      This Court has jurisdiction over this matter under 28 U.S.C. § 1332 based on diversity of citizenship of the parties and the matter in controversy exceeds $75,000.

## BEGOLLI LAWSUIT

7.      On December 19, 2006, a lawsuit was filed in the Circuit Court of Cook County, Illinois under the caption, *Igballe Begolli v. Robert Luciw, et al.*, Case No. 2006 L 013203 (the "Begolli Lawsuit").  A true and correct copy of the Complaint filed in the Begolli Lawsuit is attached hereto as Exhibit "A".

8.      Fasteel was served in the Begolli Lawsuit on or about December 19, 2006.

9.      Count II of the Begolli Lawsuit includes the following allegations:

a.      On or about November 27, 200, Defendant ROBERT LUCIW, acting as an agent of FASTEEL, owned, operated, managed, maintained and controlled a motor vehicle traveling in a northbound direction on Naperville/Plainfield Road, County of Will, State of Illinois.

b.      On or about November 27, 2006, Defendant, ROBERT LUCIW was acting as an agent of Defendant, FASTEEL, an Illinois Corporation,

c.      On or about November 27, 2006, Defendant FASTEEL, conducted significant business in the County of Cook and had multiple contacts in the County of Cook.

d.      On or about November 27, 2006, Defendant, FASTEEL, as principle for its agent, Defendant, ROBERT LUCIW, had a duty to use ordinary care in the operation of the subject motor vehicle.

e.      On or about November 27, 2006, Defendant ROBERT LUCIW, acting as an agent of FASTEEL, INC., caused the front of his vehicle to strike the

rear end of the vehicle driven by Plaintiff IGBALLE BEGOLLI near the intersection of 111th Street and Naperville/Plainfield Road in the County of Will, State of Illinois.

f.      On or about November 27, 2006, as a result of the heavy impact of Defendant, ROBERT LUCIW, acting as an agent of FASTEEL, striking the back portion of Plaintiff IGBALLE BEGOLLI's vehicle, Plaintiff's vehicle was pushed forward into the vehicle operated by KATHY BENCO.

g.      On or about November 27, 2006, Defendant ROBERT LUCIW, acting as an agent of FASTEEL, breached his duty to use ordinary care and was negligent in one or more of the following ways:

1.      Carelessly and negligently failed to operate end control said motor vehicle;

2.      Carelessly and negligently failed to exercise that degree of care and caution that a reasonable person under similar circumstances would have exercised in the operation of said motor vehicle;

3.      Carelessly and negligently failed to operate his vehicle at a safe and reasonable speed;

4.      Carelessly and negligently failed to slow his vehicle so as to avoid striking the vehicle driven by Plaintiff;

5.      Carelessly and negligently failed to stop his vehicle so as to avoid striking the vehicle driven by the Plaintiff; and

6.      Was otherwise careless and negligent.

h.      As a direct and proximate result of one or more aforesaid careless and negligent acts and/or omissions of the Defendant, ROBERT LUCIW, acting as an agent of FASTEEL, Plaintiff IGBALLE BEGOLLI was injured and suffered damages of a personal and pecuniary nature and continues to suffer from said injuries.

## NAUTILUS POLICY

10.      Nautilus issued Policy No. BN513870 (the "Nautilus Policy") to Fasteel.  A true and correct copy of the Nautilus Policy is attached hereto as Exhibit "B".

11.      The Nautilus Policy is effective from January 27, 2006 to January 27, 2007.

12.      The Each Occurrence Limit of the Nautilus Policy is $1,000,000, and the General Aggregate Limit is $2,000,000.

13.      The Nautilus Policy contains the following insuring agreement:

> 1. Insuring Agreement
>
> a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .
>
> b.      This insurance applies to "bodily injury" and "property damage" only if:
>
> > (1)      The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> >
> > (2)      The "bodily injury" or "property damage" occurs during the policy period;

14.      The Nautilus Policy contains the following exclusion:

g.  Aircraft, Auto or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

15.    The Nautilus Policy contains the following definition:

2.  "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

## GROUNDS FOR DECLARATORY JUDGMENT

16.    At the time of the injury to Begolli alleged in the Begolli Lawsuit, Luciw was driving a boom truck that contained both a boom and a flatbed for purposes of transporting steel and other materials.

17.    The boom truck was an "auto."

18.    The "auto" exclusion precludes any actual or potential coverage for the claims stated against Fasteel and Luciw in the Begolli Lawsuit.

19.    As a result of the application of the "Auto" exclusion, Nautilus has no duty to defend Fasteel or Luciw in connection with the Begolli Lawsuit.

WHEREFORE, Plaintiff, Nautilus prays:

A.    That this Court determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policy.

B.    That this Court find and declare that the Nautilus Policy does not potentially or actually cover any portion of the claims against Fasteel and Luciw in the Begolli Lawsuit.

C.      That this Court find and declare that Nautilus has no duty to defend Fasteel or Luciw in connection with the Begolli Lawsuit.

D.      That this Court grant such other and further relied as it deems proper under the evidence and circumstances.

Respectfully submitted,

NAUTILUS INSURANCE COMPANY

_____/s/ Perry M. Shorris_____
One of Nautilus' Attorneys

Perry M. Shorris, Esq.
Bollinger, Ruberry & Garvey
500 West Madison Street, Suite 2300
Chicago, IL  60661-2511
(312) 466-8000
(312) 466-8001 – Fax

08CV1940
JUDGE MANNING
MAGISTRATE JUDGE COLE

EDA

**EXHIBIT A**

From: Lisa Knox At: Columbian Agency FaxID: To: ELLEN                    Date: 2/12/2008 11:38 AM Page: 9 of 16

01/05/2007  14:11    8152302288              FASTEEL INC                    PAGE  03/07

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

IGBALLE BEGOLLI,                        )
                                        )
            Plaintiff,                  )
                                        )
    v.                                  )  No.
                                        )
ROBERT LUCIW, Individually, and         )
FASTEEL, INC., A Corporation.           )
                                        )
            Defendants.                 )

2006L013205
CALENDAR/ROOM F
TIME 00:00
PI Motor Vehicle

## COMPLAINT AT LAW

### COUNT I – AUTO NEGLIGENCE – ROBERT LUCIW

Plaintiff, IGBALLE BEGOLLI, by her attorneys, SCOTT B. WOLFMAN &
ASSOCIATES, and complaining of Defendant, ROBERT LUCIW, individually, and
states:

1.    On or about November 27, 2006, Plaintiff, IGBALLE BEGOLLI, owned,
operated, managed, maintained and controlled a motor vehicle traveling in a northbound
direction on Naperville/Plainfield Road in the County of Will, State of Illinois.

2.    On or about November 27, 2006, Defendant ROBERT LUCIW owned,
operated, managed, maintained and controlled a motor vehicle traveling in a northbound
direction on Naperville/Plainfield Road, County of Will, State of Illinois.

3.    On or about November 27, 2006, Defendant, KATHY BENCO also
owned, operated, managed, maintained and controlled a vehicle traveling in a northbound
direction on Naperville/Plainfield Road, in the County of Will, State of Illinois.

From: Lisa Knox At: Columbian Agency FaxID:  To: ELLEN                                          Date: 2/12/2008 11:38 AM Page: 10 of 16

01/05/2007  14:11    8152382288               FASTEEL INC                    PAGE  04/07

4.     On or about November 27, 2006, Defendant ROBERT LUCIW had a duty to use ordinary care in the operation of his motor vehicle.

5.     On or about November 27, 2006, Defendant ROBERT LUCIW caused the front of his vehicle to strike the rear end of the vehicle driven by Plaintiff IGBALLE BEGOLLI near the intersection of 111th Street and Naperville/Plainfield Road in the County of Will, State of Illinois.

6.     On or about November 27, 2006, as a result of the heavy impact of Defendant, ROBERT LUCIW's striking the back portion of Plaintiff IGBALLE BEGOLLI's vehicle, Plaintiff's vehicle was pushed forward into the vehicle operated by KATHY BENCO.

7.     On or about November 27, 2006, Defendant ROBERT LUCIW breached his duty to use ordinary care and was negligent in one or more of the following ways:

a,     Carelessly and negligently failed to operate and control said motor vehicle;

b.     Carelessly and negligently failed to exercise that degree of care and caution that a reasonable person under similar circumstances would have exercised in the operation of said motor vehicle;

c.     Carelessly and negligently failed to operate his vehicle at a safe and reasonable speed;

d.     Carelessly and negligently failed to slow his vehicle so as to avoid striking the vehicle driven by Plaintiff;

e.     Carelessly and negligently failed to stop his vehicle so as to avoid striking the vehicle driven by the Plaintiff;  and

f.     Was otherwise careless and negligent.

2

From: Lisa Knox  At: Columbian Agency  FaxID:  To: ELLEN                    Date: 2/12/2008  11:38 AM  Page: 11 of 16

01/05/2007   14:11        8152302288             FASTEEL  INC                      PAGE   05/07

8.     As a direct and proximate result of one or more aforesaid careless and negligent acts and/or omissions of the Defendant, ROBERT LUCIW, Plaintiff IGBALLE BEGOLLI was injured and suffered damages of a personal and pecuniary nature and continues to suffer from said injuries.

WHEREFORE, Plaintiff, IGBALLE BEGOLLI, prays for judgment in her favor and against the Defendant, ROBERT LUCIW, Individually, in a sum greater than $50,000.00, plus costs of this suit.

## COUNT II – AUTO NEGLIGENCE – FASTEEL, INC. A Corporation

Plaintiff, IGBALLE BEGOLLI, by her attorneys, SCOTT B. WOLFMAN & ASSOCIATES, and complaining of Defendant, FASTEEL, INC., A Corporation, (hereinafter referred to as "FASTEEL"), and states:

1.     On or about November 27, 2006, Plaintiff, IGBALLE BEGOLLI, owned, operated, managed, maintained and controlled a motor vehicle traveling in a northbound direction on Naperville/Plainfield Road in the County of Will, State of Illinois.

2.     On or about November 27, 2006, Defendant ROBERT LUCIW, acting as an agent of FASTEEL, owned, operated, managed, maintained and controlled a motor vehicle traveling in a northbound direction on Naperville/Plainfield Road, County of Will, State of Illinois.

3.     On or about November 27, 2006, Defendant, ROBERT LUCIW was acting as an agent of Defendant, FASTEEL, An Illinois Corporation.

4.     On or about November 27, 2006, Defendant, KATHY BENCO also owned, operated, managed, maintained and controlled a vehicle traveling in a northbound direction on Naperville/Plainfield Road, in the County of Will, State of Illinois.

3

From: Lisa Knox At: Columbian Agency FaxID:  To: ELLEN                                    Date: 2/12/2008  11:38 AM Page: 12 of 16

01/05/2007  14:11     8152382288              FASTEEL  INC                    PAGE  06/07

5.    On or about November 27, 2006, Defendant FASTEEL, conducted significant business in the County of Cook and had multiple contacts in the County of Cook.

6.    On or about November 27, 2006, Defendant, FASTEEL, as principle for its' agent, Defendant, ROBERT LUCIW, had a duty to use ordinary care in the operation of the subject motor vehicle.

7.    On or about November 27, 2006, Defendant ROBERT LUCIW, acting as an agent of FASTEEL, INC., caused the front of his vehicle to strike the rear end of the vehicle driven by Plaintiff IGBALLE BEGOLLI near the intersection of 111th Street and Naperville/Plainfield Road in the County of Will, State of Illinois.

8.    On or about November 27, 2006, as a result of the heavy impact of Defendant, ROBERT LUCIW's, acting as an agent of FASTEEL, striking the back portion of Plaintiff IGBALLE BEGOLLI's vehicle, Plaintiff's vehicle was pushed forward into the vehicle operated by KATHY BENCO.

9.    On or about November 27, 2006, Defendant ROBERT LUCIW, acting as an agent of FASTEEL, breached his duty to use ordinary care and was negligent in one or more of the following ways:

a,    Carelessly and negligently failed to operate and control said motor vehicle;

b.    Carelessly and negligently failed to exercise that degree of care and caution that a reasonable person under similar circumstances would have exercised in the operation of said motor vehicle;

c.    Carelessly and negligently failed to operate his vehicle at a safe and reasonable speed;

4

01/05/2007  14:11      8152302288           FASTEEL INC                    PAGE  07/07

d.   Carelessly and negligently failed to slow his vehicle so as
     to avoid striking the vehicle driven by Plaintiff;

e.   Carelessly and negligently failed to stop his vehicle so as to avoid
     striking the vehicle driven by the Plaintiff;  and

f.   Was otherwise careless and negligent.

10.   As a direct and proximate result of one or more aforesaid careless and
negligent acts and/or omissions of the Defendant, ROBERT LUCIW, acting as an agent
of FASTEEL, Plaintiff IGBALLE BEGOLLI was injured and suffered damages of a
personal and pecuniary nature and continues to suffer from said injuries.

WHEREFORE, Plaintiff, IGBALLE BEGOLLI, prays for judgment in her favor
and against the Defendant, FASTEEL, INC.; A Corporation, in its' capacity as a principle
of agent, Defendant, ROBERT LUCIW, in a sum greater than $50,000.00, plus costs of
this suit.

                                        Respectfully submitted,
                                        Plaintiff, IGBALLE BEGOLLI,

                        By:      _Scott Wolf_____

                                        SCOTT B. WOLFMAN, One of the
                                        Attorneys for Plaintiff

LAW OFFICES OF SCOTT B. WOLFMAN & ASSOCIATES, P.C.
641 W. Lake Street, #400
Chicago, IL 60661
312/258-1800
I.D. #40724

5

08CV1940
JUDGE MANNING
MAGISTRATE JUDGE COLE

EDA

# EXHIBIT B - PART 1



# NAUTILUS INSURANCE COMPANY

### A Stock Company

# COMMERCIAL LINES POLICY

**THIS POLICY IS NOT OBTAINED PRIMARILY FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.**

THIS POLICY CONSISTS OF:

- Declarations;
- Common Policy Conditions; and
- One or more Coverage Parts.  A Coverage Part consists of:

    - One or more Coverage Forms; and
    - Applicable Forms and Endorsements.

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

_____
Secretary

_____
President and CEO

7273 E. Butherus Drive        Scottsdale, Arizona 85260        Telephone (480) 951-0905        Facsimile (480) 951-9730

*A BERKLEY COMPANY*SM

S944J (01/02)

COMMERCIAL LINES POLICY - COMMON POLICY DECLARATIONS

# NAUTILUS INSURANCE COMPANY
Scottsdale, Arizona

**Transaction Type: NEW**

Renewal of Policy # _____
Rewrite of Policy # _____
Cross Ref. Policy # _____

Inspection Ordered:
☒ Yes ☐ No

**Policy No. BN513870**

### Notice to Policyholders

**This contract is issued, pursuant to Section 445 of the Illinois Insurance Code, by a company not authorized and licensed to transact business in Illinois and as such is not covered by the Illinois Insurance Guaranty Fund.**

**Named Insured and Mailing Address**
(No., Street, Town or City, County, State, Zip Code)
Fasteel Industries, Inc.

607 W. Chicago Street
Plainfield                IL 60544-

**Agent and Mailing Address    Agency No. 01206-00**
(No., Street, Town or City, County, State, Zip Code)
APS Insurance Agency, Inc.
585 Tollgate Road, Suites A & B
Elgin, IL 60123

NO FLAT CANCELLATION

**Policy Period:** From 01/27/2006 to 01/27/2007 at 12:01 A.M. Standard Time at your mailing address shown above.
**Business Description:** Metal Distribution & Erection                    Tax State  IL

**Form of Business:** ☐ Individual  ☐ Partnership  ☐ Joint Venture  ☐ Trust  ☐ Limited Liability Company (LLC)
☒ Organization, including a Corporation (but not including a Partnership, Joint Venture or LLC)

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY,
WE AGREE WITH YOU TO PROVIDE THE INSURANCE STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | PREMIUM |
|---|---|
| Commercial General Liability Coverage Part | $ 12,875.00 |
| | $ |
| | $ |
| | $ |
| | $ |

| Tax & Fee Schedule | | | | |
|---|---|---|---|---|
| Surplus Line Tax | $ 451.00 | TOTAL ADVANCE PREMIUM | $ | 12,875.00 |
| Assn Stamping Fee | 39.00 | Minimum & Deposit | | |
| Expense/Inspection Fee | 150.00 | TOTAL TAXES & FEES | $ | 640.00 |
| Exp/Insp Fee 100% Earned | | | | |
| | | **TOTAL** | $ | 13,515.00 |

Form(s) and Endorsement(s) made a part of this policy at time of issue:
**Refer to S902 Schedule of Forms and Endorsements.**

APS INSURANCE AGENCY, INC.

Countersigned: Elgin, IL              By _____
         02/01/2006  USER1              Countersignature or Authorized Representative, whichever is applicable

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE
FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

S944 (10/04)                    **GENERAL AGENT**

## NAUTILUS INSURANCE COMPANY

Policy Number: **BN513870**

Insured: Fasteel Industries, Inc.

# SCHEDULE OF FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| S944J | (01/02) | Nautilus Policy Jacket |
| IL0017 | (11/98) | Common Policy Conditions |
| IL0021 | (07/02) | Nuclear Energy Liab Exclusion |
| S013 | (12/00) | Minimum Earned Premium Endt |
| S020 | (04/03) | Service of Suit |
| S150 | (10/04) | CGL Coverage Part Declarations |
| CG0001 | (10/01) | Comml General Liability Cvg Form |
| CG0062 | (12/02) | War Liability Exclusion |
| CG2136 | (01/96) | Exclusion - New Entities |
| CG2160 | (09/98) | Excl-Y2K Computer-Other Related |
| CG2175 | (12/02) | Excl of Cert & Other Acts Terror |
| S001 | (07/04) | Amendment of Premium Conditions |
| S006 | (09/03) | Excl - Classification Limitation |
| S007 | (01/98) | Contractual Liability Limitation |
| S012 | (09/03) | Excl-Contractor & Subcontractor |
| S022 | (09/03) | Ded Liab Ins - Incl Cost & Exp |
| S038 | (05/04) | Amendment of Liquor Liab Excl |
| S040 | (04/99) | Exclusion - Cancer |
| S051 | (09/03) | Additional Exclusions & Conds |
| S075 | (08/03) | Exclusion - Subsidence of Land |
| S091 | (04/99) | Exclusion - Lead Contamination |
| S147 | (10/96) | Non-Renewal Changes |
| S222 | (05/04) | Excl - Intellectual Prop Rights |
| S261 | (08/03) | Asbestos Exclusion |
| S262 | (08/03) | Silica Exclusion |

All Other Forms and Endorsements of this Policy Remain Unchanged.

## SCHEDULE OF FORMS AND ENDORSEMENTS (Continued)

**MISCELLANEOUS FORMS APPLICABLE:**

All Other Forms and Endorsements of this Policy Remain Unchanged.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   **a.** Make inspections and surveys at any time;

   **b.** Give you reports on the conditions we find; and

   **c.** Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   **a.** Are safe or healthful; or

   **b.** Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

IL 00 21 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

   **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

   **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2001
IL 00 21 07 02    □

**NAUTILUS INSURANCE COMPANY**

POLICY NUMBER: **BN513870**                                                            ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MINIMUM EARNED PREMIUM ENDORSEMENT

If this insurance is cancelled at your request, there will be a minimum earned premium retained by us of

$ _____3,219_____ or _____25_____ % of the premium for this insurance, whichever is greater.

If a policy fee, inspection fee or expense constant is applicable to this policy, the fee(s) will be fully earned and no refund of fees will be made.

All other Terms and Conditions of this Policy remain unchanged.

## NAUTILUS INSURANCE COMPANY

ENDORSEMENT

## SERVICE OF SUIT

Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, we hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the Statute, or his successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action,"suit" or proceeding instituted by or on behalf of you or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above named as the person to whom the said officer is authorized to mail  such process or a true copy thereof.

It is further agreed that service of process in such "suit" may be made upon Michael Kilgas, or his nominee of the Company at 7273 East Butherus Drive, Scottsdale, Arizona 85260 and that in any "suit"  instituted against any one of them upon this policy, we will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

It is agreed that in any state requiring a standard form of policy, insurance hereunder on values or properties in such state shall attach and cover in accordance with the terms and conditions of such standard form.

S020  (04/03)

## NAUTILUS INSURANCE COMPANY
# COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

POLICY NUMBER: BN513870
☐ Extension of Declarations is attached.          Effective Date: 01/27/2006   12:01 A.M. Standard Time

| LIMITS OF INSURANCE | ☐ If box is checked, refer to form S132 for Limits of Insurance. | |
|---|---|---|
| General Aggregate Limit (Other Than Products/Completed Operations) | $ 2,000,000 | |
| Products/Completed Operations Aggregate Limit | $ 2,000,000 | |
| Personal and Advertising Injury Limit | $ 1,000,000 | Any One Person Or Organization |
| Each Occurrence Limit | $ 1,000,000 | |
| Damage To Premises Rented To You Limit | $ 500,000 | Any One Premises |
| Medical Expense Limit | $ 5,000 | Any One Person |

**RETROACTIVE DATE (CG 00 02 ONLY)**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" which occurs
before the Retroactive Date, if any, shown here: NONE   (Enter Date or "NONE" if no Retroactive Date applies)

**BUSINESS DESCRIPTION AND LOCATION OF PREMISES**

BUSINESS DESCRIPTION: Metal Distribution & Erection
LOCATION OF ALL PREMISES YOU OWN, RENT, OR OCCUPY:   ☒ Location address is same as mailing address.
1. 607 W. Chicago Street          Plainfield        IL 60544-
2.                                                              -
Additional locations (if any) will be shown on form S170.
LOCATION OF JOB SITE  (If Designated Projects are to be Scheduled):
                                                              -
                                                              -

| CODE # - | CLASSIFICATION | * | PREMIUM BASIS | RATE PR/CO | RATE All Other | ADVANCE PREMIUM |
|---|---|---|---|---|---|---|
| 15405 - | Metal Dealers or Distributors - structural | s | 2,000,000 | 5.257 | | 10,514 |
| | | | | | 1.114 | 2,228 |
| 97655 - | Metal Erection - structural NOC | p | 1,250 | 15.595 | | 19 |
| | | | | | 91.262 | 114 |

**\* PREMIUM BASIS SYMBOLS**    ✚ **= Products/Completed Operations are subject to the General Aggregate Limit**

**a** = Area  (per 1,000 sq. ft. of area)         **o** = Total Operating Expenses                      **s** = Gross Sales  (per $1,000 of Gross Sales)
**c** = Total Cost  (per $1,000 of Total Cost)         (per $1,000 Total Operating Expenditures)       **t** = See Classification
**m** = Admissions  (per 1,000 Admissions)       **p** = Payroll  (per $1,000 of Payroll)             **u** = Units  (per unit)

PREMIUM FOR THIS COVERAGE PART  $    12,875

**FORMS AND ENDORSEMENTS** (other than applicable Forms and Endorsements shown elsewhere in the policy)
Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:
**Refer to S902 Schedule of Forms and Endorsements**

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright ISO Properties, Inc., 2000

S150  (10/04)

COMMERCIAL GENERAL LIABILITY
CG 00 01 10 01

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II – Who Is An Insured**.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V – Definitions**.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III – Limits Of Insurance**; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II – Who Is An Insured** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II – Who Is An Insured** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II – Who Is An Insured** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc.,  2000

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2000

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

© ISO Properties, Inc., 2000

   **(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

  **(2)** Any loss, cost or expense arising out of any:

   **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

  **(a)** Less than 26 feet long; and

  **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

© ISO Properties, Inc., 2000

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance ; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

© ISO Properties, Inc.,  2000

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

 © ISO Properties, Inc.,  2000 CG 00 01 10 01 □

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while taking part in athletics.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

**h. War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

   **(1)** Agrees in writing to:

   **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

   **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

   **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

   **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   **(2)** Provides us with written authorization to:

   **(a)** Obtain records and other information related to the "suit"; and

   **(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

     © ISO Properties, Inc., 2000     CG 00 01 10 01    □

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

© ISO Properties, Inc., 2000

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

b. **Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in **a.** above;

      (2) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   **b.** While it is in or on an aircraft, watercraft or "auto"; or

   **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   **b.** Vehicles maintained for use solely on or next to premises you own or rent;

   **c.** Vehicles that travel on crawler treads;

   **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      **(1)** Power cranes, shovels, loaders, diggers or drills; or

      **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

   **e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      **(2)** Cherry pickers and similar devices used to raise or lower workers;

   **f.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      **(1)** Equipment designed primarily for:

         **(a)** Snow removal;

         **(b)** Road maintenance, but not construction or resurfacing; or

         **(c)** Street cleaning;

      **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   **a.** False arrest, detention or imprisonment;

   **b.** Malicious prosecution;

   **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

   **f.** The use of another's advertising idea in your "advertisement"; or

   **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

    © ISO Properties, Inc.,  2000    CG 00 01 10 01    ☐

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

© ISO Properties, Inc., 2000

**b.** Includes

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

    **a.** Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b.** Includes

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        **(2)** The providing of or failure to provide warnings or instructions.

 © ISO Properties, Inc.,  2000 CG 00 01 10 01    □

COMMERCIAL GENERAL LIABILITY
CG 00 62 12 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **i.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**WAR**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**a.** War, including undeclared or civil war; or

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**C.** Exclusion **h.** under Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** does not apply. Medical payments due to war are now subject to Exclusion **g.** of Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** since "bodily injury" arising out of war is now excluded under Coverage **A.**

© ISO Properties, Inc., 2002

COMMERCIAL GENERAL LIABILITY
CG 21 36 01 96

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – NEW ENTITIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **4.** of WHO IS AN INSURED (Section II) does not apply.

  Copyright, Insurance Services Office, Inc.,  1994     ☐

COMMERCIAL GENERAL LIABILITY
CG 21 60 09 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" (or "personal and advertising injury" if defined as such in your policy) arising directly or indirectly out of:

**a.** Any actual or alleged failure, malfunction or inadequacy of:

**(1)** Any of the following, whether belonging to any insured or to others:

**(a)** Computer hardware, including microprocessors;

**(b)** Computer application software;

**(c)** Computer operating systems and related software;

**(d)** Computer networks;

**(e)** Microprocessors (computer chips) not part of any computer system; or

**(f)** Any other computerized or electronic equipment or components; or

**(2)** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph 2.a.(1) of this endorsement

due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

**b.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **2.a.** of this endorsement.

COMMERCIAL GENERAL LIABILITY
CG 21 75 12 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism" or an "other act of terrorism". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   **a.** Physical injury that involves a substantial risk of death; or

   **b.** Protracted and obvious physical disfigurement; or

   **c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

   **a.** The act resulted in aggregate losses in excess of $5 million; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**3.** "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** In the event of any incident of a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

© ISO Properties, Inc., 2002

CG 21 75 12 02    ☐

# NAUTILUS INSURANCE COMPANY

POLICY NUMBER: **BN513870**                                          **LIABILITY ENDORSEMENT**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDMENT OF PREMIUM CONDITIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

The Premium Audit Condition under **SECTION IV - CONDITIONS** is **replaced** by the  following:

**Premium Audit**

    **a.**  We will compute all premiums for this Coverage Part in accordance with our rules and rates.

        The advance premium shown in the Declarations was computed based on rates in effect at the time the policy was issued.  On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

        The rates for each classification shown in the Declarations are multiplied by the estimated premium bases of that classification for the term to determine the advance premium.  We may conduct an audit of your books to determine the actual premium bases developed during the policy period.  The premium bases used are payroll, admissions, gross sales, total cost, area, each exposure unit, units or total operating expenditures and are defined in accordance with our rules and the following additional definitions:

    **(1)**  **Payroll** (premium basis symbol **p**):  Remuneration paid to "employees", including but not limited to:

        **(a)**  Money or substitutes for money; commissions; bonuses; overtime; payments to statutory insurance or pension plans; profit sharing or incentive plans; pay for holidays, vacation or sickness; and fees paid to employment agencies for temporary personnel provided to you.

        **(b)**  If your operations consist of a number of separate operations classified individually in the Declarations, the payroll will be allocated to each classification where you have maintained records for each separate operation.  Any such operation for which separate records are **not** maintained by you shall be assigned to the highest rated classification.

        **(c)**  For premium computation purposes, the payroll of executive officers, individual insureds and co-partners is subject to a minimum annual payroll per person of:

> $ 33,500

        (If no entry is made, the minimum payroll as established by our rating rules will apply.)

      The rates apply per $1,000 of Payroll.

    **(2)**  **Admissions** (premium basis symbol **m**):  The total number of persons, other than your "employees", admitted to the insured event or to events conducted on the premises whether on paid admissions, tickets, complimentary tickets or passes.

      The rates apply per 1,000 Admissions.

    **(3)**  **Gross Sales** (premium basis symbol **s**):  The gross amount charged by you, your concessionaires or by others trading under your name for:

        **(a)** All goods or products, sold or distributed;

        **(b)** Operations performed during the policy period; and

        **(c)** Rentals; or

        **(d)** Dues or fees.

      The rates apply per $1,000 of Gross Sales.

    **(4) Total Cost** (premium basis symbol **c**): The total cost of all work let or sublet in connection with each specific project including:

      **(a)** The cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work; or

      **(b)** All fees, bonuses or commissions made, paid or due.

    The rates apply per $1,000 of Total Cost.

    **(5) Area** (premium basis symbol **a**): The total number of square feet of floor space at the insured premises.

    The rates apply per 1,000 square feet of Area.

    **(6) Each** (premium basis symbol **t**): This basis of premium involves units of exposure, and the quantity comprising each unit of exposure is indicated in the Declarations, such as "per person".

    The rates apply per each unit of exposure.

    **(7) Units** (premium basis symbol **u**): A single room or group of rooms intended for occupancy as separate living quarters by a family, by a group of unrelated persons living together, or by a person living alone.

    The rates apply per Unit.

    **(8) Total Operating Expenditures** (premium basis symbol **o**): Total expenditures (including grants, entitlements and shared revenue) without regard to source of revenue during the policy period including accounts payable.

    The rates apply per $1,000 of Total Operating Expenditures.

**b.** Premium shown in this Coverage Part as advance premium is a minimum and deposit premium. At the close of each audit period, we will compute the earned premium for that period. If the earned premium is greater than the advance premium paid, an audit premium is due. Audit premiums are due and payable on notice to the first Named Insured. Failure to pay the audit premium(s) due will subject this policy, and/or any in force policy of yours, to cancellation for non-payment of premium.

If the policy is canceled prior to the expiration date, we will retain the earned premium developed by an audit of your books for the period the policy was in force or the earned premium developed by multiplying the advance premium by the applicable pro-rata or short-rate factor, whichever is greater.

If the total earned premium for the policy period is less than the advance premium, such advance premium is the minimum premium for the policy period indicated and is not subject to further adjustment.

**c.** The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request. Failure to supply such records upon request will be deemed a breach of condition and subject this policy, and/or any in force policy of yours, to cancellation for breach of conditions.

**d.** We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

All other terms and conditions of this policy remain unchanged.

# NAUTILUS INSURANCE COMPANY

**LIABILITY ENDORSEMENT**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - CLASSIFICATION LIMITATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is **added** to Paragraph **2. Exclusions** of **SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY** and **COVERAGE C - MEDICAL PAYMENTS:**

> This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments for operations that are not classified or shown in the Commercial General Liability Coverage Part Declarations, its endorsements or supplements.

All other terms and conditions of this policy remain unchanged.

          Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**NAUTILUS INSURANCE COMPANY**

LIABILITY ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CONTRACTUAL LIABILITY LIMITATION
(Limited Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS LIABILITY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the DEFINITIONS section is **replaced** by the following:

"Insured Contract" means any written:

1.  Contract for a lease of premises.  However, that portion of the contract for a lease of premises that indemnifies any person or organization for "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

2.  Sidetrack agreement;

3.  Easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4.  Obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5.  Elevator maintenance agreement; or

6.  That part of any other contract or agreement pertaining to your business (including indemnification of a municipality in connection with work performed for a municipality) under which you assume tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An "insured contract" does not include that part of any contract or agreement:

1.  That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

2.  That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    (a)  Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

    (b)  Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

3.  Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection or engineering services;

4.  That indemnifies any person or organization for  "property damage" to premises rented or loaned to you;

5.  That indemnifies any person or organization for "bodily injury" or "property damage" arising from an "occurrence" caused by the sole negligence of said person or organization; or

6.  That indemnifies any person or organization for "bodily injury" or "property damage" arising from the ownership, maintenance or use of any aircraft.

All other Terms and Conditions of this Insurance remain unchanged.

S 007 (01/98)

## NAUTILUS INSURANCE COMPANY

**LIABILITY ENDORSEMENT**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - CONTRACTORS AND SUBCONTRACTORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is **added** to Paragraph **2. Exclusions** of **SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, SECTION I - COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY** and **SECTION I - COVERAGE C - MEDICAL PAYMENTS:**

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of operations performed for you by contractors or subcontractors you hire or your acts or omissions in connection with your general supervision of such operations.

All other terms and conditions of this policy remain unchanged.

S012 (09/03)          Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**NAUTILUS INSURANCE COMPANY**

POLICY NUMBER: **BN513870**                                        **LIABILITY ENDORSEMENT**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY INSURANCE
(Including Costs and Expenses)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

| Coverage | Amount of Deductible |
|---|---|
| Bodily Injury Liability (including Costs and Expenses) | $  2,500  per claim |
| Property Damage Liability (including Costs and Expenses) | $  2,500  per claim |

1. Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on the insured's behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.  The limits of insurance applicable to each "occurrence" for such coverages will be reduced by the amount of such deductible.  Aggregate limits for such coverages shall not be  reduced by the application of such deductible.

2. The deductible amounts stated are on a **PER CLAIM BASIS.**  The deductible amount applies:
   a. Under the Bodily Injury Liability, to all damages because of "bodily injury" sustained by any one person; or
   b. Under the Property Damage Liability, to all damages because of "property damage" sustained by any one person or organization;
   as a result of any one "occurrence".

3. The deductible amounts stated in the Schedule above applies toward investigation, adjustment and legal expenses incurred in the handling and investigation of each claim, whether or not payment is made to the claimant, compromise settlement is reached or the claim is denied.

4. The terms of this insurance, including those with respect to:
   a. Our right and duty to defend "suits" seeking those damages; and
   b. Your duties in the event of an "occurrence", claim or "suit",
   apply regardless of the application of the deductible.

5. We may, at our sole election and option, either:
   a. Pay any part or all of the deductible amount to effect settlement of any claim or "suit" and upon notification of the action taken, you will promptly reimburse us for such part of the deductible amount as has been paid by us; or
   b. Upon our receipt of notice of any claim or at any time thereafter, request you to pay and deposit with us all or any part of the deductible amount, to be held and applied according to the terms of this policy.

All other terms and conditions of this policy remain unchanged.

S022  (09/03)                    Includes copyrighted material of Insurance Services Offices, Inc., with its permission.

**NAUTILUS INSURANCE COMPANY**

**LIABILITY ENDORSEMENT**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDMENT OF LIQUOR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

Exclusion **c., Liquor Liability,** in Paragraph **2., Exclusions** of **Section I - Coverages - Bodily Injury and Property Damage Liability** is **replaced** by the following:

This insurance does not apply to:

**c.  Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you:

**(1)** Manufacture, sell or distribute alcoholic beverages;

**(2)** Serve or furnish alcoholic beverages for a charge where the activity:

**(a)** Requires a license; and/or

**(b)** Is for the purpose of financial gain or livelihood;

**(3)** Serve or furnish alcoholic beverages without a charge, if a license is required for such activity; or

**(4)** Are an owner or lessor of premises used for such purposes.

All other terms and conditions of this policy remain unchanged.

S038  (05/04)

# EXHIBIT B - PART 2

## NAUTILUS INSURANCE COMPANY

LIABILITY ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION - CANCER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is **added**  to Paragraph 2., Exclusions of Coverage (Section I - Coverages):

This insurance does not apply to "bodily injury", "personal and advertising injury" or medical payments arising out of or caused by any ultra-violet light, rays or any other carcinogenic agent producing or inciting malignant growths or any other cancerous disorder.

All other Terms and Conditions of this Insurance remain unchanged.

S040  (04/99)

## NAUTILUS INSURANCE COMPANY

LIABILITY ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL EXCLUSIONS AND CONDITIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## TOTAL POLLUTION EXCLUSION ENDORSEMENT

Exclusion **f.** under Paragraph **2.**, **Exclusions** of **Section I - Coverage A - Bodily Injury and Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

CG 21 49 09 99

## EXCLUSION - PUNITIVE OR EXEMPLARY DAMAGES

The following is **added** to EXCLUSIONS:

This insurance does not apply to a claim of or indemnification for punitive or exemplary damages.  If a "suit" shall have been brought against you for a claim within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then we will afford a defense for such action.  We shall not have an obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

S017 (01/98)

## LIMITATION - OTHER INSURANCE

That portion of sub-paragraph **4b. Excess Insurance (4.b.(1)(d)** in CG0001 or **4.b.(1)(e)** in CG0002) under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** that provides Excess Insurance if the loss arises out of the maintenance or use of aircraft, "autos" or watercraft is **deleted.**

S073  (08/03)

## NOTICE TO POLICYHOLDERS

This insurance does not provide coverage as required by Environmental Protection Agency (EPA) 40 CFR Parts 280 and 281 for underground storage tanks nor any coverage under CERCLA or similar State or Federal Environmental Act(s).

This policy Excludes all Coverage for Pollution.

S005  (02/95)

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

**A.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

CG 21 47 07 98

# AMENDATORY ENDORSEMENT - EMPLOYEE EXCLUSION

Exclusion **e. Employer's Liability** of Paragraph **2. Exclusions** under **SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is **replaced** by the following:

**e.** **Employer's Liability**

    "Bodily injury" to:

    **(1)** An "employee" of the insured arising out of and in the course of:

        **(a)** Employment by the insured; or

        **(b)** Performing duties related to the conduct of the insured's business; or

    **(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

    This exclusion applies:

    **(1)** Whether the insured may be liable as an employer or in any other capacity; and

    **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

As respects this endorsement only, the definition of "Employee" in DEFINITIONS is **replaced** by the following:

    **"Employee"** shall include, but is not limited to, any person or persons hired by, loaned to, leased to, contracted for, or volunteering services to the insured, whether or not paid by the insured.

S127 (08/03)

## EXCLUSION - MICROORGANISMS, BIOLOGICAL ORGANISMS, BIOAEROSOLS OR ORGANIC CONTAMINANTS

The following exclusion is added to EXCLUSIONS:

This insurance does not apply to:

1. Liability, injury or damage of any kind, including but not limited to "bodily injury", "property damage", or "personal and advertising injury" arising out of, related to, caused by or in any way connected with the exposure to, presence of, formation of, existence of or actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any microorganisms, biological organisms, bioaerosols or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast or other toxins, mycotoxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

2. Any loss, cost or expense arising out of any:

   a. Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of microorganisms, biological organisms, bioaerosols or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast, or other toxins, mycotoxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion; or

   b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of microorganisms, biological organisms, bioaerosols or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast, or other toxins, mycotoxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

We shall have no duty to investigate, defend or indemnify any insured against any loss, claim, "suit" or other proceeding alleging injury or damage of any kind, including but not limited to "bodily injury", "property damage", or "personal and advertising injury" to which this endorsement applies.

S233 (08/01)

All other terms and conditions of this policy remain unchanged.

**NAUTILUS INSURANCE COMPANY**

LIABILITY ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EXCLUSION - SUBSIDENCE OF LAND

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

The following exclusion is **added** to Paragraph **2. Exclusions** under **SECTION I - COVERAGES:**

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments caused by, resulting from, contributed to or aggravated by the "subsidence" of land.

The following definition is **added** to the **DEFINITIONS** Section:

**"Subsidence"** means earth movement, including but not limited to landslide, mud flow, earth sinking, rising or shifting.

All other terms and conditions of this policy remain unchanged.

           Includes copyrighted material of Insurance Services Office, Inc., with its permission

## NAUTILUS INSURANCE COMPANY

LIABILITY ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EXCLUSION - LEAD CONTAMINATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following exclusion is **added** to EXCLUSIONS:

This insurance does not apply to:

"Bodily injury",  "property damage", "personal and advertising injury" or medical payments arising out of the ingestion, inhalation or absorption of lead in any form;

Any loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

Any loss, cost or expense arising out of any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

All other Terms and Conditions of this policy remain unchanged.

S091  (04/99)

### NAUTILUS INSURANCE COMPANY

LIABILITY ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NON-RENEWAL CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Paragraph 9 of Section IV - WHEN WE DO NOT RENEW is **deleted** in its entirety

All other Terms and Conditions of the Policy remain unchanged.

S 147  (10/96)

## NAUTILUS INSURANCE COMPANY

**LIABILITY ENDORSEMENT**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EXCLUSION - INTELLECTUAL PROPERTY RIGHTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **i.** in Paragraph **2. Exclusions** of **Section I - Coverage B - Personal and Advertising Injury Liability** is **replaced** by the following:

This insurance does not apply to:

**i.**   **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret, other intellectual property rights or the use of another's advertising idea in your "advertisements".

For the purpose of this endorsement, Exclusion **o.** in Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury and Property Damage Liability** is **replaced** by the following:

This insurance does not apply to:

**o.**   **Personal And Advertising Injury**

"Bodily injury" arising out of:

**(1)**  "Personal and advertising injury";

**(2)**  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**(3)**  Oral or written publication, in any manner, or material that violates a person's right of privacy;

**(4)**  The use of another's advertising idea in your "advertisement"; or

**(5)**  Infringing upon another's copyright, trade dress or slogan in your "advertisement".

For the purpose of this endorsement, Paragraph **14.** of the **Definitions** Section is **replaced** by the following:

**14.**  "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.**   False arrest, detention or imprisonment;

**b.**   Malicious prosecution; or

**c.**   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor.

All other terms and conditions of this policy remain unchanged.

## NAUTILUS INSURANCE COMPANY

**LIABILITY ENDORSEMENT**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

**A.** The following is added to Paragraph **2.**, Exclusions of both **Section I - Coverage A - Bodily Injury And Property Damage Liability,** and **Section I - Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to:

**Asbestos**

1. "Bodily injury", "property damage", "personal and advertising injury" or "reduction in value" related to the actual, alleged, or threatened presence of, or exposure to "asbestos" in any form, or to harmful substances emanating from "asbestos". This includes ingestion, inhalation, absorption, contact with, existence or presence of, or exposure to "asbestos".  Such injury from or exposure to  "asbestos" also includes, but is not limited to:

   **a.** The existence, installation, storage, handling or transportation of "asbestos";

   **b.** The removal, abatement or containment of "asbestos" from any structures, materials, goods, products, or manufacturing process;

   **c.** The disposal of "asbestos";

   **d.** Any structures, manufacturing processes, or products containing "asbestos";

   **e.** Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage; or

   **f.** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above.

2. Any loss, cost or expense, including, but not limited to payment for investigation or defense, fines, penalties and other costs or expenses, arising out of any:

   **a.** Claim, "suit", demand, judgment, obligation, order, request, settlement, or statutory or regulatory requirement that any insured or any other person or entity test for, monitor, clean up, remove, contain, mitigate, treat, neutralize, remediate, or dispose of, or in any way respond to, or assess the actual or alleged effects of "asbestos"; or

   **b.** Claim, "suit", demand, judgment, obligation, request, or settlement due to any actual, alleged, or threatened injury or damage from "asbestos" or testing for, monitoring, cleaning up, removing, containing, mitigating, treating, neutralizing, remediating, or disposing of, or in any way responding to or assessing the actual or alleged effects of, "asbestos" by any insured or by any other person or entity; or

   **c.** Claim, "suit", demand, judgment, obligation, or request to investigate which would not have occurred, in whole or in part, but for the actual or alleged presence of or exposure to "asbestos".

This exclusion applies regardless of who manufactured, produced, installed, used, owned, sold, distributed, handled, stored or controlled the "asbestos".

**B.** The following exclusion is added to Paragraph **2.**, Exclusions, of **Coverage C Medical Payments:**

We will not pay expenses for "bodily injury":

**Asbestos**

Due to the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of or presence of, "asbestos" in any form.

**C.** The following definitions are added to the **Definitions** Section:

"Asbestos" means any type or form of asbestos, asbestos fibers, asbestos products, or asbestos materials, including any products, goods, or materials containing asbestos or asbestos fibers, products or materials and any gases, vapors, scents or by-products produced or released by asbestos.

"Reduction in value" means any claim, demand or "suit" that alleges diminution, impairment or devaluation of property.

## NAUTILUS INSURANCE COMPANY

**LIABILITY ENDORSEMENT**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## SILICA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY FORM
PRODUCTS/COMPLETED OPERATIONS COVERAGE FORM

**A.** The following is added to Paragraph **2.**, Exclusions of both **Section I - Coverage A - Bodily Injury And Property Damage Liability,** and **Section I - Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to:

**Silica**

1. "Bodily injury", "property damage", or "personal and advertising injury" related to the actual, alleged, or threatened presence of or exposure to "silica" in any form, or to harmful substances emanating from "silica". This includes the use of, consumption of, ingestion of, inhalation of, absorption of, contact with, existence of, presence of, proliferation of, discharge of, dispersal of, seepage of, migration of, release of, escape of, or exposure to "silica".  Such injury from or exposure to "silica" also includes, but is not limited to:

   a. The existence, storage, handling or transportation of "silica";

   b. The removal, abatement or containment of "silica" from any structures, materials, goods, products, or manufacturing process;

   c. The disposal of "silica";

   d. Any structures, manufacturing processes, or products containing "silica";

   e. Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage;

   f. Any product manufactured, sold, handled or distributed by or on behalf of the insured which contains "silica"; or

   g. Any supervision, instructions, recommendations, warranties (express or implied), warnings or advice given or which should have been given.

2. Any loss, cost or expense including, but not limited to, payment for investigation or defense, fines, penalties, interest and other costs or expenses, arising out of any:

   a. Claim, "suit", demand, judgment, obligation, order, request, settlement, or statutory or regulatory requirement that any insured or any other person or entity test for, monitor, clean up, remove, contain, mitigate, treat, neutralize, remediate, or dispose of, or in any way respond to, or assess the actual or alleged effects of "silica"; or

   b. Claim, "suit", demand, judgment, obligation, request, or settlement due to any actual, alleged, or threatened injury or damage from "silica" or testing for, monitoring, cleaning up, removing, containing, mitigating, treating, neutralizing, remediating, or disposing of, or in any way responding to or assessing the actual or alleged effects of, "silica" by any insured or by any other person or entity; or

   c. Claim, "suit", demand, judgment, obligation, or request to investigate which would not have occurred, in whole or in part, but for the actual or alleged presence of or exposure to "silica".

   This exclusion applies regardless of who produced, installed, used, owned, sold, distributed, handled, stored or controlled the "silica".

**B.** The following exclusion is added to Paragraph **2.**, Exclusions, of **Coverage C Medical Payments**:

We will not pay expenses for "bodily injury":

**Silica**

Due to the actual, alleged or threatened consumption of, inhalation of, ingestion of, absorption of, contact with, exposure to, existence of or presence of, "silica" in any form.

**C.** The following definition is added to the **DEFINITIONS** Section:

"Silica" means the mineral, silicon dioxide, and any type or form of it including, but not limited to, silica-containing products, goods, fibers or materials, silica dust, fine particulate dust of siliceous or silicic minerals, and any gases, vapors, scents or by-products produced or released by silica, silica dust or silica-containing products, goods, fibers or materials. Siliceous or silicic minerals include, but are not limited to, sand, quartz, slate, granite and flint.

## NAUTILUS INSURANCE COMPANY

POLICY NUMBER: BN 513870

Named Insured: Fasteel Industries, Inc.

ENDORSEMENT#1
Agency # 1206
APS Insurance Agency

Endorsement Effective Date          January 27, 2006

### GENERAL CHANGE ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the Named Insured on this policy is amended to read as follows:

Fasteel Inc..

Tax & Fee Schedule

| | | | |
|---|---|---|---|
| Surplus Lines Tax | $00 | PREMIUM: _X None __ AP __ RP | $00 |
| Fire Marshall Tax | 00 | Total Taxes & Fees | $00 |
| Stamping Fee | 00 | | |

All other Terms and Conditions of the Policy remain unchanged.          TOTAL PREMIUM DUE     $00

_____

Countersignature or Authorized Representative whichever is applicable

3-6-06

S901 (01/97)

## NAUTILUS INSURANCE COMPANY

POLICY NUMBER: BN513870

Named Insured:    Fasteel Inc.

Endorsement #2
Agency # 1206
APS Insurance Agency

Endorsement Effective Date    June 12, 2006

## GENERAL CHANGE ENDORSEMENT

In consideration of an additional premium of $300.00, it is hereby understood and agreed that the additional insured endorsement, S 152 (01/04), is added to this policy as per the attached.

This premium is fully earned and is not subject to the return premium provisions of this policy.

Tax & Fee Schedule

| | | | | |
|---|---|---|---|---|
| Surplus Lines Tax | $11.00 | PREMIUM: ___ None _X_ AP ___ RP | $300.00 |
| Fire Marshall Tax | N/A | Total Taxes & Fees | $ 12.00 |
| Stamping Fee | $ 1.00 | | |

All other Terms and Conditions of the Policy remain unchanged.

TOTAL PREMIUM DUE   $312.00

*Michael J Corben*

6-20-06

S901 (01/97)

Countersignature or Authorized Representative, whichever is applicable

## NAUTILUS INSURANCE COMPANY

POLICY NUMBER:    BN513870                                    **LIABILITY ENDORSEMENT**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ CAREFULLY.

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies coverage provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SECTION II - WHO IS AN INSURED** is amended to include as an insured the person or organization shown in the Schedule below, but only for liability arising out of your negligence and only for occurrences or coverage not otherwise excluded in the policy to which this endorsement applies.

### SCHEDULE

Name of Person or Organization:

All Styles Iron Products (Contractor)
Gallagher & Henry Builders (General Contractor)
Standard Bank Corporation (Owner)
13236 Chicago Bloomington Trail
Homer Glen, IL  60491

Job: Standard Bank, Minooka, IL

All other Terms and Conditions of this Insurance remain unchanged.

S 152 (01/04)

# NAUTILUS INSURANCE COMPANY

POLICY NUMBER: BN513870

Named Insured:    Fasteel Inc.

Endorsement #3
Agency # 1206
APS Insurance Agency

Endorsement Effective Date    March 17, 2006

## GENERAL CHANGE ENDORSEMENT

In consideration of an additional premium of $100.00, it is hereby understood and agreed that the additional insured endorsement, S 152 (01/04), is added to this policy as per the attached.

This premium is fully earned and is not subject to the return premium provisions of this policy.

Tax & Fee Schedule

| | | PREMIUM: ___ None __X_ AP ___ RP | $100.00 |
|---|---|---|---|
| Surplus Lines Tax | $4.00 | | |
| Fire Marshall Tax | N/A | Total Taxes & Fees | $   4.00 |
| Stamping Fee | NIL | | |

·All other Terms and Conditions of the Policy remain unchanged.

TOTAL PREMIUM DUE    $104.00

7-19-06

*Michael J Corken*

S901 (01/97)

Countersignature or Authorized Representative, whichever is applicable

## NAUTILUS INSURANCE COMPANY

**POLICY NUMBER:** BN513870                      **LIABILITY ENDORSEMENT**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ CAREFULLY.

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies coverage provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SECTION II - WHO IS AN INSURED** is amended to include as an insured the person or organization shown in the Schedule below, but only for liability arising out of your negligence and only for occurrences or coverage not otherwise excluded in the policy to which this endorsement applies.

## SCHEDULE

Name of Person or Organization:

Tim Thompson Custom Homes (General Contractor)
111 S. Vine Street
Hinsdale, IL 60521

All other Terms and Conditions of this Insurance remain unchanged.

S 152 (01/04)

# NAUTILUS INSURANCE COMPANY

POLICY NUMBER: BN513870

Named Insured:   Fasteel, Inc.

Endorsement #4
Agency # 1206
APS Insurance Agency

Endorsement Effective Date   August 31, 2006

## GENERAL CHANGE ENDORSEMENT

In consideration of an additional premium of $400.00, it is hereby understood and agreed that the additional insured endorsement, S 152 (01/04), is added to this policy as per the attached.

This premium is fully earned and is not subject to the return premium provisions of this policy.

Tax & Fee Schedule

| | | | | |
|---|---|---|---|---|
| Surplus Lines Tax | $14.00 | PREMIUM: ___ None __X_ AP ___ RP | $400.00 |
| Fire Marshall Tax | N/A | Total Taxes & Fees | $ 16.00 |
| Stamping Fee | $ 2.00 | | |

All other Terms and Conditions of the Policy remain unchanged.

TOTAL PREMIUM DUE   $416.00

9-6-06

_Michael J Corken_
Countersignature or Authorized Representative, whichever is applicable

S901 (01/97)

## NAUTILUS INSURANCE COMPANY

**POLICY NUMBER:**    BN513870            **LIABILITY ENDORSEMENT**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ CAREFULLY.

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies coverage provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SECTION II - WHO IS AN INSURED** is amended to include as an insured the person or organization shown in the Schedule below, but only for liability arising out of your negligence and only for occurrences or coverage not otherwise excluded in the policy to which this endorsement applies.

### SCHEDULE

Name of Person or Organization:

Dome Design Build Group
105 Ogden Ave.
Clarendon Hills, IL 60514

Tim Thompson Custom Homes
111 S. Vine Street
Hinsdale, IL 60521

Lakeland Building Group, Inc.
22514 Lake Mary Dr.
Plainfield, IL 60544

Village of River Forest
400 Park Ave.
River Forest, IL 60305

All other Terms and Conditions of this Insurance remain unchanged.

S 152 (01/04)

## NAUTILUS INSURANCE COMPANY

POLICY NUMBER: BN513870

Named Insured: Fasteel Inc.

ENDORSEMENT #5
Agency # 1206
APS Insurance Agency

Endorsement Effective Date:    August 31, 2006

## GENERAL CHANGE ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the following location is added to this policy under the Location Of All Premises You Own, Rent, Or Occupy, on the Commercial General Liability Coverage Part Declarations, form S 150 (08/02) as follows:

Location #2: 213B Otto Drive, New Lenox, IL  60451

Tax & Fee Schedule

| | | |
|---|---|---|
| Surplus Lines Tax | $ 0.00 | |
| Fire Marshall Tax | N/A | |
| Stamping Fee | 0.00 | |
| Service Fee: | 0.00 | |

PREMIUM: ___ None __X_ AP ____ RP        $0.00
Total Taxes & Fees $0.00

All other Terms and Conditions of the Policy remain unchanged.

9-6-06

TOTAL PREMIUM DUE    $0.00

_Michael J Corben_

Countersignature or Authorized Representative, whichever is applicable

S901 (01/97)

# NAUTILUS INSURANCE COMPANY

POLICY NUMBER: BN513870

Named Insured: Fasteel Inc.

ENDORSEMENT #5
Agency # 1206
APS Insurance Agency

Endorsement Effective Date: August 31, 2006

## GENERAL CHANGE ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the following location is added to this policy under the Location Of All Premises You Own, Rent, Or Occupy, on the Commercial General Liability Coverage Part Declarations, form S 150 (08/02) as follows:

Location #2: 213B Otto Drive, New Lenox, IL  60451

Tax & Fee Schedule

| | | | |
|---|---|---|---|
| Surplus Lines Tax | $ 0.00 | PREMIUM: ___ None __X_ AP ____ RP | $0.00 |
| Fire Marshall Tax | N/A | Total Taxes & Fees | $0.00 |
| Stamping Fee | 0.00 | | |
| Service Fee: | 0.00 | | |

All other Terms and Conditions of the Policy remain unchanged.

TOTAL PREMIUM DUE    $0.00

9-6-06

_Michael J Corben_

S901 (01/97)

Countersignature or Authorized Representative, whichever is applicable

# NAUTILUS INSURANCE COMPANY

POLICY NUMBER: BN513870

Named Insured:   Fasteel Inc.

Endorsement #6
Agency # 1206
APS Insurance Agency

Endorsement Effective Date   August 30, 2006

# GENERAL CHANGE ENDORSEMENT

In consideration of an additional premium of $100.00, it is hereby understood and agreed that the additional insured endorsement, S 152 (01/04), is added to this policy as per the attached.

This premium is fully earned and is not subject to the return premium provisions of this policy.

Tax & Fee Schedule

| | | | | |
|---|---|---|---|---|
| Surplus Lines Tax | $4.00 | PREMIUM: ___ None __X_ AP ___ RP | $100.00 |
| Fire Marshall Tax | N/A | Total Taxes & Fees | $  4.00 |
| Stamping Fee | NIL | | |

All other Terms and Conditions of the Policy remain unchanged.

10-6-06

S901 (01/97)

TOTAL PREMIUM DUE   $104.00

*Michael J Corben*
Countersignature or Authorized Representative, whichever is applicable

# NAUTILUS INSURANCE COMPANY

**POLICY NUMBER:** BN531870                              **LIABILITY ENDORSEMENT**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ CAREFULLY.

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies coverage provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SECTION II - WHO IS AN INSURED** is amended to include as an insured the person or organization shown in the Schedule below, but only for liability arising out of your negligence and only for occurrences or coverage not otherwise excluded in the policy to which this endorsement applies.

## SCHEDULE

Name of Person or Organization:

Santeford Properties, Inc.
586 Oakmont Lane
Westmont, IL 60559

All other Terms and Conditions of this Insurance remain unchanged.

S 152 (01/04)

# NAUTILUS INSURANCE COMPANY

POLICY NUMBER: BN513870

Named Insured:   Fasteel Inc.

Endorsement #7
Agency # 1206
APS Insurance Agency

Endorsement Effective Date   September 26, 2006

## GENERAL CHANGE ENDORSEMENT

In consideration of an additional premium of $300.00, it is hereby understood and agreed that the additional insured endorsement, S 152 (01/04), is added to this policy as per the attached.

This premium is fully earned and is not subject to the return premium provisions of this policy.

·Tax & Fee Schedule

| | | | | |
|---|---|---|---|---|
| Surplus Lines Tax | $11.00 | PREMIUM: ___ None __X_ AP ___ RP | $300.00 |
| Fire Marshall Tax | N/A | Total Taxes & Fees | $ 12.00 |
| Stamping Fee | $ 1.00 | | |

All other Terms and Conditions of the Policy remain unchanged.

TOTAL PREMIUM DUE   $312.00

10-10-06

*Michael J Corben*

S901 (01/97)

Countersignature or Authorized Representative, whichever is applicable

## NAUTILUS INSURANCE COMPANY

**POLICY NUMBER:**   BN513870                                    **LIABILITY ENDORSEMENT**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ CAREFULLY.

# ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies coverage provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SECTION II - WHO IS AN INSURED** is amended to include as an insured the person or organization shown in the Schedule below, but only for liability arising out of your negligence and only for occurrences or coverage not otherwise excluded in the policy to which this endorsement applies.

### SCHEDULE

Name of Person or Organization:

Twin Contractors, Inc.
Wexford Development Group, LLC
Homer Development, LLC

Project: Stonebridge Woods Subdivision, Homer Glen, IL

All other Terms and Conditions of this Insurance remain unchanged.

S 152 (01/04)

# NAUTILUS INSURANCE COMPANY

POLICY NUMBER: BN513870

Named Insured: Fasteel Inc.

ENDORSEMENT #8
Agency # 1206
APS Insurance Agency

Endorsement Effective Date:  August 31, 2006

## GENERAL CHANGE ENDORSEMENT

In consideration of a return premium of $100.00, it is hereby understood and agreed that the charge for a Duplicate additional insured on Endorsement #4 is hereby Deleted from this policy as follows:

Tim Thompson Custom Homes
111 S. Vine Street
Hinsdale, IL  60521

Tax & Fee Schedule

| | | | | |
|---|---|---|---|---|
| Surplus Lines Tax | $4.00 | PREMIUM: ___ None ___ AP __X_ RP | $100.00 |
| Fire Marshall Tax | N/A | Total Taxes & Fees | $  4.00 |
| Stamping Fee | NIL | | |

All other Terms and Conditions of the Policy remain unchanged.

TOTAL PREMIUM DUE   $104.00

11-7-06

*Michael J Corker*

Countersignature or Authorized Representative, whichever is applicable

S901 (01/97)

## NAUTILUS INSURANCE COMPANY

POLICY NUMBER: BN513870

Named Insured:  Fasteel Inc..

Endorsement #9
Agency # 1206
APS Insurance Agency

Endorsement Effective Date   October 19, 2006

## GENERAL CHANGE ENDORSEMENT

In consideration of an additional premium of $100.00, it is hereby understood and agreed that the additional insured endorsement, S 152 (01/04), is added to this policy as per the attached.

This premium is fully earned and is not subject to the return premium provisions of this policy.

Tax & Fee Schedule

| | | | | |
|---|---|---|---|---|
| Surplus Lines Tax | $4.00 | PREMIUM: | ___ None _X_ AP ___ RP | $100.00 |
| Fire Marshall Tax | N/A | | Total Taxes & Fees | $ 4.00 |
| Stamping Fee | NIL | | | |

All other Terms and Conditions of the Policy remain unchanged.

TOTAL PREMIUM DUE   $104.00

11-7-06

*Michael J Corker*

_____
Countersignature or Authorized Representative, whichever is applicable

S901 (01/97)

# NAUTILUS INSURANCE COMPANY

**POLICY NUMBER:** BN513870                 **LIABILITY ENDORSEMENT**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ CAREFULLY.

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies coverage provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SECTION II - WHO IS AN INSURED** is amended to include as an insured the person or organization shown in the Schedule below, but only for liability arising out of your negligence and only for occurrences or coverage not otherwise excluded in the policy to which this endorsement applies.

## SCHEDULE

Name of Person or Organization:

Village of Frankfort
432 West Nebraska
Franfort, IL 60423

RE: All Work Performed by the Named Insured

All other Terms and Conditions of this Insurance remain unchanged.

S 152 (01/04)

# NAUTILUS INSURANCE COMPANY

POLICY NUMBER: BN513870

Named Insured:    Fasteel Inc.

Endorsement #10
Agency # 1206
APS Insurance Agency

Endorsement Effective Date    October 24, 2006

## GENERAL CHANGE ENDORSEMENT

In consideration of an additional premium of $100.00, it is hereby understood and agreed that the additional insured endorsement, S 152 (01/04), is added to this policy as per the attached.

This premium is fully earned and is not subject to the return premium provisions of this policy.

Tax & Fee Schedule

| | | | | |
|---|---|---|---|---|
| Surplus Lines Tax | $4.00 | PREMIUM: ___ None __X_ AP ___ RP | $100.00 |
| Fire Marshall Tax | N/A | Total Taxes & Fees | $ 4.00 |
| Stamping Fee | NIL | | |

All other Terms and Conditions of the Policy remain unchanged.

TOTAL PREMIUM DUE   $104.00

11-7-06

*Michael J Corken*

S901 (01/97)

Countersignature or Authorized Representative, whichever is applicable

## NAUTILUS INSURANCE COMPANY

**POLICY NUMBER:**    BN513870            **LIABILITY ENDORSEMENT**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ CAREFULLY.

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies coverage provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SECTION II - WHO IS AN INSURED** is amended to include as an insured the person or organization shown in the Schedule below, but only for liability arising out of your negligence and only for occurrences or coverage not otherwise excluded in the policy to which this endorsement applies.

### SCHEDULE

Name of Person or Organization:

Overstreet Builders, Inc.
7 Duval Court
Bolingbrook, IL 60490

All other Terms and Conditions of this Insurance remain unchanged.

S 152 (01/04)

## NAUTILUS INSURANCE COMPANY

POLICY NUMBER: BN513870

Named Insured:    Fasteel Inc.

Endorsement #11
Agency # 1206
APS Insurance Agency

Endorsement Effective Date    October 30, 2006

## GENERAL CHANGE ENDORSEMENT

In consideration of an additional premium of $200.00, it is hereby understood and agreed that the additional insured endorsement, S 152 (01/04), is added to this policy as per the attached.

This premium is fully earned and is not subject to the return premium provisions of this policy.

Tax & Fee Schedule

| | | | | | |
|---|---|---|---|---|---|
| Surplus Lines Tax | $7.00 | PREMIUM: ___ None __X_ AP ___ RP | $200.00 |
| Fire Marshall Tax | N/A | Total Taxes & Fees | $ 7.00 |
| Stamping Fee | $.00 | | |

All other Terms and Conditions of the Policy remain unchanged.

TOTAL PREMIUM DUE    $207.00

*Michael J Corken*

11-9-06

S901 (01/97)

_____
Countersignature or Authorized Representative, whichever is applicable

## NAUTILUS INSURANCE COMPANY

**POLICY NUMBER:** BN513870          **LIABILITY ENDORSEMENT**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ CAREFULLY.

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies coverage provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SECTION II - WHO IS AN INSURED** is amended to include as an insured the person or organization shown in the Schedule below, but only for liability arising out of your negligence and only for occurrences or coverage not otherwise excluded in the policy to which this endorsement applies.

### SCHEDULE

Name of Person or Organization:

Faley Homes, LLC & Mike and Maureen Mulligan
1525 N. Arlington Heights Rd., Suite D
Arlington Heights, IL  60004

All other Terms and Conditions of this Insurance remain unchanged.

## NAUTILUS INSURANCE COMPANY

POLICY NUMBER: BN513870

Named Insured:  Fasteel Inc.

Endorsement #12
Agency # 1206
APS Insurance Agency

Endorsement Effective Date   October 30, 2006

## GENERAL CHANGE ENDORSEMENT

In consideration of an additional premium of $200.00, it is hereby understood and agreed that the additional insured endorsement, S 152 (01/04), is added to this policy as per the attached.

This premium is fully earned and is not subject to the return premium provisions of this policy.

Tax & Fee Schedule

| | | | | |
|---|---|---|---|---|
| Surplus Lines Tax | $7.00 | PREMIUM: ___ None __X_ AP ___ RP | $200.00 |
| Fire Marshall Tax | N/A | Total Taxes & Fees | $ 7.00 |
| Stamping Fee | $1.00 | | |

All other Terms and Conditions of the Policy remain unchanged.

TOTAL PREMIUM DUE   $207.00

11-9-06

*Michael J Corken*

_____
Countersignature or Authorized Representative, whichever is applicable

S901 (01/97)

### NAUTILUS INSURANCE COMPANY

**POLICY NUMBER:**    BN513870                                    **LIABILITY ENDORSEMENT**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ CAREFULLY.

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies coverage provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SECTION II - WHO IS AN INSURED** is amended to include as an insured the person or organization shown in the Schedule below, but only for liability arising out of your negligence and only for occurrences or coverage not otherwise excluded in the policy to which this endorsement applies.

### SCHEDULE

Name of Person or Organization:

New Millennium Realty & Edward Bohrer
P.O. Box 7157
Deerfield, IL  60015

All other Terms and Conditions of this Insurance remain unchanged.

S 152 (01/04)

## NAUTILUS INSURANCE COMPANY

POLICY NUMBER: **BN513870**                                    ENDORSEMENT # __13__

Named Insured: Fasteel Inc.                          Agency # 01206 – 00

APS Insurance Agency, Inc.
585 Tollgate Road, Suites A & B
Elgin, IL 60123

Endorsement Effective Date: 11/17/2006

## GENERAL CHANGE ENDORSEMENT

In consideration of an additional premium of $200.00, it is hereby agreed and understood that form S152(01/04) Additional Insured is added to the policy as per the attached.

| Tax & Fee Schedule | | | | |
|---|---|---|---|---|
| Surplus Lines Tax | $   7.00 | PREMIUM: ☐ None ☒ AP ☐ RP | $ | 200.00 |
| Stamping Fee | 1.00 | Total Taxes & Fees | $ | 8.00 |
| | | TOTAL PREMIUM DUE | $ | 208.00 |

All other Terms and Conditions of the Policy remain unchanged.

APS INSURANCE AGENCY INC

Elgin, IL
01/11/2007    ICG                    _____
S901 (01/97)                         Countersignature or Authorized Representative, whichever is applicable

# NAUTILUS INSURANCE COMPANY

**POLICY NUMBER:  BN513870**                                         **LIABILITY ENDORSEMENT**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies coverage provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SECTION II - WHO IS AN INSURED** is amended to include as an insured the person or organization shown in the Schedule below, but only for liability arising out of your negligence and only for occurrences or coverage not otherwise excluded in the policy to which this endorsement applies.

### SCHEDULE

Name of Person or Organization:

```
Sherman Condominiums
c/o Mark Schaefer
1132 Sherman Condominiums
Evanston, IL 60202
```

All other terms and conditions of this policy remain unchanged.

S152  (01/04)

# NAUTILUS INSURANCE COMPANY

POLICY NUMBER: BN513870

Named Insured: Fasteel Inc.

ENDORSEMENT# 14
Agency # 1206

APS Insurance Agency

Endorsement Effective Date       November 17, 2006

## GENERAL CHANGE ENDORSEMENT

In consideration of a return premium of $100.00, it is hereby understood and agreed that the charge for adding endorsement #13 stands corrected.

Tax & Fee Schedule

| | | |
|---|---|---|
| Surplus Lines Tax | $4.00 | |
| Fire Marshall Tax | $0.00 | |
| Stamping Fee | $0.00 | |

All other Terms and Conditions of the Policy remain unchanged.

2-12-07

S901 (01/97)

PREMIUM: _None_ __ AP _X_ RP  $100.00
Total Taxes & Fees  $ 4.00

TOTAL RETURN PREMIUM DUE  $104.00

_Michael J Corben_
_____
Countersignature or Authorized Representative, whichever is applicable

# NAUTILUS INSURANCE COMPANY

POLICY NUMBER: **BN513870**

ENDORSEMENT # __15__

Named Insured: Fasteel Inc.

Agency # 01206 — 01

APS Insurance Agency, Inc.
585 Tollgate Road, Suites A & B
Elgin, IL 60123

Endorsement Effective Date: 01/22/2007

## GENERAL CHANGE ENDORSEMENT

In consideration of an additional premium of $100.00, It is hereby agreed and understood that form S152(01/04) Additional Insured is added to the policy as per the attached.

| | | | | | |
|---|---|---|---|---|---|
| Tax & Fee Schedule | | | PREMIUM: ☐ None ☒ AP ☐ RP $ | | 100.00 |
| Surplus Lines Tax | $ | 4.00 | Total Taxes & Fees $ | | 4.00 |
| | | | TOTAL PREMIUM DUE $ | | 104.00 |

All other Terms and Conditions of the Policy remain unchanged.

APS INSURANCE AGENCY INC

Elgin, IL
04/12/2007   ICG

_____
Countersignature or Authorized Representative, whichever is applicable

S901 (01/97)

# NAUTILUS INSURANCE COMPANY

**POLICY NUMBER: BN513870**                                   **LIABILITY ENDORSEMENT**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies coverage provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SECTION II - WHO IS AN INSURED** is amended to include as an insured the person or organization shown in the Schedule below, but only for liability arising out of your negligence and only for occurrences or coverage not otherwise excluded in the policy to which this endorsement applies.

### SCHEDULE

Name of Person or Organization:

```
Marc L. Wiener (owner)
1N681 Bob-O-Link Dr.
Winfield, IL 60190
```

All other terms and conditions of this policy remain unchanged.

S152 (01/04)

ALL END

## NAUTILUS INSURANCE COMPANY

Page: 1 of 1

POLICY NUMBER: **BN513870**

ENDORSEMENT # __A1__

Named Insured: FASTEEL INDUSTRIES, INC.

Agency # 01206-00

## FINAL PREMIUM ADJUSTMENT ENDORSEMENT

In accordance with the premium and audit provisions stated in this policy, the premium is adjusted for the period of:

01/27/2006     to     01/27/2007

| CODE # - | CLASSIFICATION | * | AUDIT EXPOSURE | RATE PR/CO | RATE All Other | AUDIT PREMIUM |
|---|---|---|---|---|---|---|
| 15405 - | Metal Dealers or Distributors - structural | S | 2,293,309 | 5.257 | | 12,056 |
| | | | | | 1.114 | 2,555 |
| 49950 - | Additional Insured | | | | | 1,800 |
| | - | | | | | |
| | - | | | | | |
| | - | | | | | |
| | - | | | | | |

| | |
|---|---|
| Total Audit Premium $ | 16,411 |
| Less Deposit/Credit $ | 14,675 |
| Additional Premium $ | 1,736 |

**\* AUDIT EXPOSURE CODE**
+ = Products/Completed Operations are subject to the General Aggregate Limit

| | | | |
|---|---|---|---|
| a = Area | | s = Gross Sales | |
| c = Total Cost | | t = See Classification | |
| m = Admissions | | u = Units | |
| p = Payroll | | o = Total Operating Expenses | |

| Tax & Fee Schedule | Tax Rate | | |
|---|---|---|---|
| Illinois State Tax | 0.0350 | $ | 61.00 |
| Illinois Stamping Fee | 0.0030 | | 5.00 |

| | | |
|---|---|---|
| Total Taxes & Fees | $ | 66.00 |
| TOTAL | $ | 1,802.00 |

**JOAN JUEDES**

JUN 0 8 2007

All other Terms and Conditions of this Policy remain unchanged.

S046 (06/03)     06/08/07     JEJ

Countersignature or Authorized Representative, whichever is applicable

AMEND

**NAUTILUS INSURANCE COMPANY**                    Page: 1 of 1

POLICY NUMBER: BN513870                    ENDORSEMENT # A2

Named Insured: FASTEEL INDUSTRIES, INC.                    Agency # 01206 - 00

Endorsement Effective Date: 01/27/2006

## GENERAL CHANGE ENDORSEMENT

It is hereby understood and agreed that endorsement A1 is null and void with a
return premium of $1,736.

| Tax & Fee Schedule | Tax Rate | | PREMIUM: ☐ None  ☐ AP  ☒ RP  $ | -1,736.00 |
|---|---|---|---|---|
| Illinois State Tax | 0.0350 | $ -61.00 | | |
| Illinois Stamping Fee | 0.0030 | -5.00 | Total Taxes & Fees $ | -66.00 |
| | | | TOTAL PREMIUM DUE  $ | -1,802.00 |

All other Terms and Conditions of the Policy remain unchanged.                    JOAN JUEDES

                    JUN 1 9 2007

06/19/07      JEJ

S901 (01/97)                    Countersignature or Authorized Representative, whichever is applicable

AU END



**NAUTILUS INSURANCE COMPANY**

Page: 1 of 1

POLICY NUMBER: BN513870

ENDORSEMENT # __A3__

Named Insured: FASTEEL INDUSTRIES, INC.

Agency # 01206 – 00

## FINAL PREMIUM ADJUSTMENT ENDORSEMENT

In accordance with the premium and audit provisions stated in this policy, the premium is adjusted for the period of:

01/27/2006     to     01/27/2007

| CODE # – | CLASSIFICATION | * | AUDIT EXPOSURE | RATE PR/ CO | All Other | AUDIT PREMIUM |
|---|---|---|---|---|---|---|
| 15405 – | Metal Dealers or Distributors - structural | s | 2,293,309 | 5.257 | | 12,056 |
| | | | | | 1.114 | 2,555 |
| | | | | | | |
| 49950 – | Additional Insured | | | | | 1,900 |
| | – | | | | | |
| | – | | | | | |
| | – | | | | | |
| | – | | | | | |

| | |
|---|---|
| **\* AUDIT EXPOSURE CODE** | |
| **+ = Products/ Completed Operations are subject to the General Aggregate Limit** | |

a = Area    s = Gross Sales
c = Total Cost    t = See Classification
m = Admissions    u = Units
p = Payroll    o = Total Operating Expenses

| | | |
|---|---|---|
| Total Audit Premium | $ | 16,511 |
| Less Deposit/ Credit | $ | 14,775 |
| Additional Premium | $ | 1,736 |

| Tax & Fee Schedule | Tax Rate | |
|---|---|---|
| Illinois State Tax | 0.0350 | $ 61.00 |
| Illinois Stamping Fee | 0.0030 | 5.00 |

| | | |
|---|---|---|
| Total Taxes & Fees | $ | 66.00 |
| TOTAL | $ | 1,802.00 |

JOAN JUEDES

JUN 1 9 2007

*All other Terms and Conditions of this Policy remain unchanged.*

S046 (06/ 03)    06/19/2007    JEJ

Countersignature or Authorized Representative, whichever is applicable